45 A.3d 936

**Denise BRYAN et al.**

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.**

No. 0353, Sept. Term, 2011.

Court of Special Appeals of Maryland.

June 7, 2012.

588

Robert E. Wilson (Wilson & Parlett, on the brief) Upper Marlboro, MD, for appellant.

Michael J. Budow (Howard R. Meinster, Budow & Noble, PC, on the brief) Bethesda, MD, for appellee.

Panel: *EYLER, JAMES R., WRIGHT, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

---

* Eyler, James R., J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

LAWRENCE F. RODOWSKY (Retired, Specially Assigned), J.

In this motor tort case, the defense is nonmutual issue preclusion. The issue on this appeal centers on the finality of the termination of a prior judicial proceeding.

The plaintiffs-appellants are one of the drivers, Brenton Bryan (Brenton), and his three passengers, his wife, Denise Bryan (Denise), and his two children, Taeysha Bryan (Taeysha) and Tashera Davis (Tashera), collectively, the Plaintiffs. They allege that the accident was caused by a phantom driver. The defendant-appellee is State Farm Mutual Automobile Insurance Company (State Farm), the uninsured motorists coverage carrier of the vehicle operated by Brenton.

The Circuit Court for Montgomery County entered summary judgment in favor of State Farm by applying nonmutual preclusion on the issue of liability. For the reasons that follow, we shall affirm in part and reverse in part.

## Facts and Procedural History

The motor vehicle accident took place in Freeport, New York on May 29, 2006. In the case before us, the Plaintiffs allege that a phantom vehicle changed lanes and cut off the Plaintiffs' vehicle. This maneuver, Plaintiffs assert, caused their vehicle to collide with two other vehicles. One of these vehicles was being driven by Juan Chevez, whose wife, Ines Chevez, was a passenger in the car. Juan and Ines Chevez (the Chevezes) filed suit against Brenton in the Civil Court of the City of New York, County of Queens, alleging that Brenton's negligence caused the accident.

The Chevezes' suit was tried to a jury, commencing on December 13, 2010. The Chevezes and Brenton were respectively represented by counsel. The issue of damages was bifurcated from liability. Juan Chevez described the happening of the accident, and Brenton and Denise testified in the defense case. Following the arguments of counsel, only liability was submitted to the jury. The jury returned a verdict on two special interrogatories. To the first, "[W]as the defen-

dant, Brenton Bryan, negligent in the operation of his motor vehicle on May 29, 2006?", the jury unanimously responded, "Yes." To the second question, "[W]as the negligence of the defendant, Brenton Bryan, a substantial factor in bringing about the accident on May 29, 2006?", the jury unanimously replied, "Yes."

The parties returned to court the next day and advised, on the record, that the case was settled for the payment of $15,000 to each of the Chevezes, who would provide a general release and a "Stipulation of Discontinuance." The trial judge questioned each of the Chevezes to assure that they understood the terms of the settlement. Whereupon, the court had the jurors return to the courtroom and thanked them for their service.

The record before us also contains an "Extract of Minutes," certified by the New York court's clerk which reads:

"On Dec. 13, 2010 this case was tried with a Jury in Part 101 ... and a Verdict was rendered therein in favor of the Plaintiff[s, *i.e.*, the Chevezes] on liability. After this verdict, the parties settled the matter in the amount of $30,000.00."

On February 5, 2009, the Plaintiffs had filed a complaint in the Circuit Court for Prince George's County against State Farm for uninsured motorist benefits arising out of the May 2006 accident. The case was transferred to the Circuit Court for Montgomery County on January 28, 2010. State Farm moved for summary judgment, arguing that the 2010 jury verdict in New York on the issue of liability collaterally estopped the Plaintiffs from pursuing their suit against State Farm. Following a hearing on April 21, 2011, the circuit court entered summary judgment in favor of State Farm. The circuit court reasoned:

"The principal behind the defense [of issue preclusion] has been satisfied in this case and that the New York jury determined adversely to this Plaintiff the exact same issue that's in question in this case, and accordingly, I grant the defendant's motion."

State Farm's motion sought summary judgment against all of the Plaintiffs, and the docket entry of judgment records that that motion was granted.

The Plaintiffs timely appealed to this Court.

## Standard of Review

The standard by which we review a trial court's granting of a motion for summary judgment is one of legal correctness. *See, e.g., Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202, 1206 (1990). "If no material facts are placed in genuine dispute, this Court must determine whether the Circuit Court correctly entered summary judgment as a matter of law." *Anderson v. Council of Gables,* 404 Md. 560, 571, 948 A.2d 11, 18 (2008).

Our review is further limited to the basis relied upon by the trial court. *See, e.g., Warner v. German,* 100 Md.App. 512, 517, 642 A.2d 239, 242 (1994) ("when analyzing the lower court's decision, we ordinarily are confined to the basis relied on by that court and may not otherwise explain its conclusion by introducing new legal theories"); *Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 536, 836 A.2d 655, 671 (2003).

## Choice of Law

State Farm's argument rests on the jury verdict at a bifurcated trial in a New York court and on the minute, or docket entry, describing the ultimate resolution of the proceeding. No party to the instant matter has raised an issue of choice of law, much less asked this Court to take judicial notice of New York law. Under these circumstances, we shall decide the issue as if the special verdict, finding Brenton liable for the May 29, 2006 accident, were rendered in a Maryland circuit court at a trial in which the issue of liability had been bifurcated, followed by a settlement resulting in a docket entry of voluntary dismissal with prejudice. *See* Maryland Code (1974, 2006 Repl.Vol.), § 10–504 of the Courts and Judicial Proceedings Article; *Pulte Home Corp. v. Parex, Inc.,* 174 Md.App. 681, 758, 923 A.2d 971, 1014–15 (2007).

### Elements of Issue Preclusion

The purpose of collateral estoppel is to " 'avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.' " *Colandrea v. Wilde Lake Cmty. Ass'n,* 361 Md. 371, 387, 761 A.2d 899, 907 (2000) (quoting *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502, 503–04 (1989)). Maryland courts follow a four-part test to determine if a party is collaterally estopped from bringing a claim:

> " '1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> " '2. Was there a final judgment on the merits?
>
> " '3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
>
> " '4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?' "

*Id.* at 391, 761 A.2d at 909 (quoting *Washington Suburban Sanitary Comm'n v. TKU Assocs.,* 281 Md. 1, 18–19, 376 A.2d 505, 514 (1977)). There is no contention here that elements 1, 3 and 4 have not been met as to Brenton. We are concerned in this case only with the requirement for a final judgment on the merits.

The Court of Appeals has frequently referred to the second element as a "valid and final" judgment. *See, e.g., Colandrea,* 361 Md. at 387, 761 A.2d at 907 (" 'A common and well-established articulation of the doctrine is that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." ' ") (quoting *Janes v. State,* 350 Md. 284, 295, 711 A.2d 1319, 1324 (1998)); *Gibson v. State,* 328 Md. 687, 693, 616 A.2d 877, 880 (1992) ("The collateral estoppel doctrines operates to a preclusive end, so that when an issue of ultimate fact has been determined once by a valid and final judgment, the issue cannot be litigated again between the same parties in a future

action."); *Welsh v. Gerber Products, Inc.*, 315 Md. 510, 516, 555 A.2d 486, 489 (1989) (same); *Cousins v. State*, 277 Md. 383, 398, 354 A.2d 825, 834 (1976) (same).

## Two Rules

The positions of the parties may be stated quite simply. Plaintiffs contend that issue preclusion requires a final judgment and that a jury verdict is not a final judgment. State Farm contends that there has been a trial and a determination within a judicial system of the issue of liability and that, by virtue of the settlement and termination of the proceeding, that factual determination is beyond modification by a court.

The Plaintiffs' position is supported by the traditional statement of the requirements for *res judicata*. The older authorities equate finality for purposes of appealability with finality for the purpose of *res judicata*, including claim preclusion, and thus do not give *res judicata* effect to a jury verdict. 2 *Freeman on Judgments* § 251 (3d ed. 1881), states:

"No question becomes *Res Judicata* until it is settled by a *final judgment*. For this reason, the verdict of a jury is not admissible as evidence to create an estoppel, before it has received the sanction of the court, by passing into a judgment. Until then, it is liable to be made nugatory by an order arresting judgment or granting a new trial."

(Emphasis in original).

In *Oklahoma City v. McMaster*, 196 U.S. 529, 533, 25 S.Ct. 324, 325, 49 L.Ed. 587 (1905), the Supreme Court said:

"Without a judgment the plea of *res judicata* has no foundation; and neither the verdict of a jury nor the findings of a court, even though in a prior action, upon the precise point involved in a subsequent action and between the same parties, constitute a bar. In other words, the thing adjudged must be by a judgment. A verdict, or finding of the court alone, is not sufficient. The reason stated is, that the judgment is the bar and not the preliminary determination of the court or jury. It may be that the verdict was set aside, or the finding of facts amended, reconsidered, or

themselves set aside or a new trial granted. The judgment alone is the foundation for the bar."

State Farm's position is supported by what appears to be the majority of the more modern precedents and authorities. No one has directed us to any Maryland appellate decision that addresses the precise issue before us, and we have found none.

In 18A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4434, at 110 (2002), the authors summarize that "[r]ecent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." (Footnote omitted). They describe as "the leading modern case" *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

In that case, the parties were apparently in a race to the courthouse over the arbitrability of their contract dispute. In the initial case, the First Circuit, on an interlocutory appeal from an injunction, found that there was no substantial issue of misrepresentation in the formation of the contract. In the trailing case, the Second Circuit held that the issue of a misrepresentation that might vitiate the contract was conclusively decided by the First Circuit, even though there was no final judgment in the earlier case. Judge Friendly, writing for the court, said:

"Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291 [for purposes of appeal], ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached

such a stage that a court sees no really good reason for permitting it to be litigated again."

297 F.2d at 89 (footnote omitted).

Two decades later, the American Law Institute adopted Judge Friendly's position in Restatement (Second) of Judgments § 13. It reads:

"Requirement of finality—The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."

The "[c]riteria for determining finality in the application of issue preclusion" are set forth in Comment g to § 13. (Italics omitted). They are:

"The requirement of finality of judgment is interpreted strictly, as indicated in Comment $a$, when bar or merger is at stake. This is natural when it is considered that the effect of a judgment as bar or merger is to 'extinguish' a claim, and, when there is merger, to create a new claim based on the judgment itself. See § 17(1), (2). Usually there is no occasion to interpret finality less strictly when the question is one of issue preclusion, that is, when the question is whether decision of a given issue in an action may be carried over to a second action in which it is again being litigated. (If the second action is on the same claim, preclusion is an instance of direct estoppel; if it is on a different claim, preclusion is an instance of collateral estoppel. See § 17, Comment $c$.) But to hold invariably that that kind of carry-over is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship—either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the

prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. See Illustrations 1–3. Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision."

Illustration 3 to § 13 is strongly analogous to the case before us.

"3. In a jurisdiction that permits 'split' trials (a trial of liability followed, if liability is found, by a separate trial to ascertain the damages), the jury in a negligence case finds for the plaintiff A as to liability, the defendant B having denied his own negligence and pleaded contributory negligence on the part of A. Under the law of the jurisdiction, B cannot appeal at this point as there is no judgment that qualifies as final for that purpose; an appealable judgment would be reached later, when, in the second phase of trial, another jury assessed the damages. But prior to the second phase, the jury's verdict as to liability may be held conclusive as to the issues of A's and B's negligence in any other action between them in which the same issues appear."

Although Illustration 3 hypothesizes a mutual issue preclusion, while, in the case before us, State Farm argues for a nonmutual issue preclusion, the distinction has no bearing on finality, as an element of issue preclusion. In mutual and nonmutual issue preclusion, the doctrine is applied in the current proceeding against the party in the prior proceeding who suffered an adverse determination of the issue. In either

case, if the degree of finality required to trigger the doctrine is satisfied in a mutual setting, it should be sufficient in a nonmutual setting.

The Court of Appeals recognized nonmutual issue preclusion in 1968 in *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A.2d 100 (1968). Since that time, at least one case has arisen in the Court of Appeals involving whether nonmutual defensive issue preclusion was available following a litigation settlement, namely, *Welsh v. Gerber Products, Inc.,* 315 Md. 510, 555 A.2d 486 (1989).[1] The prior litigation was an automobile accident case in which the plaintiffs included an infant passenger. The parties settled for the adverse operator's automobile liability policy limits, without any relevant pretrial rulings. The plaintiffs announced in open court that the settlement was without prejudice to rights against other persons or entities. Because there was an infant plaintiff, the settling insurer insisted that a judgment be entered for the amount of the settlement. This was done, and the judgment was marked " 'PAID AND SATISFIED.' "

In the second suit, the infant plaintiff sued the manufacturer of the car seat in which he was riding at the time of the accident. The manufacturer asserted that the prior consent judgment precluded the infant plaintiff on the issue of satisfaction of the claim. The Court of Appeals held that it "accept[ed] the modern view that litigation of the issue of damages is not precluded by the entry of a consent judgment *unless that issue was actually litigated,* or the parties intended preclusion of that issue." *Id.* at 522, 555 A.2d at 492 (emphasis added). In *Welsh,* the issue had not been litigated, so it was necessary to determine the intent of the parties. In the case before us, the issue of liability was actually litigated, and that is the extent of the issue preclusion sought by State Farm.

---

1. A settlement in prior litigation was also involved in *Missler v. Anne Arundel County,* 271 Md. 70, 314 A.2d 451 (1974), where preclusion issues arose in subsequent litigation between the same parties. *Missler* is discussed, *infra,* note 3.

Acceptance of the modern approach to issue preclusion on facts analogous to those in the case before us is illustrated by a number of cases from various courts.

*Sandoval v. Superior Court of Kings County*, 140 Cal. App.3d 932, 190 Cal.Rptr. 29 (1983), was the second of two product liability suits against a manufacturer of a cotton picking machine. In the earlier suit, the injured plaintiff obtained a verdict and judgment in the trial court, and the parties settled during the pendency of the defendant's appeal. Their agreement provided that the settlement was not to be construed as an admission of liability, and the plaintiff dismissed the action. In a second action by a different plaintiff, the trial court denied the plaintiff's motion for partial summary judgment as to liability on the ground that the prior litigation was never final. On an interlocutory appeal from that ruling, the Fifth Appellate District of California held that the determination of the issue of liability was final for issue preclusion purposes, applying, *inter alia*, the rationale of § 13 of Restatement (Second) of Judgments. The court said:

"The purpose of a dismissal with prejudice is to end the litigation and to prevent the plaintiff from again filing suit on the same cause of action or related causes of action arising from the same transaction against the same defendant. We see nothing in the dismissal with prejudice concept that forecloses a finding of finality sufficient to preclude relitigation of the issues decided against the defendant. This is particularly true when the agreement to dismiss with prejudice is part of a substantial settlement in plaintiff's favor after a final judgment in the trial court. Such a settlement and dismissal of the lawsuit can fairly be construed as a judgment favoring plaintiff on the merits. To hold otherwise would exalt form over substance."

*Sandoval*, 140 Cal.App.3d at 939, 190 Cal.Rptr. at 33–34 (citations & footnote omitted).[2]

---

2. The *Sandoval* court, however, declined to apply offensive nonmutual collateral estoppel under the equitable principles of *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), because

The *Sandoval* court also relied upon its earlier decision in *Louie Queriolo Trucking, Inc. v. Superior Court of Kern County,* 252 Cal.App.2d 194, 60 Cal.Rptr. 389 (1967). There, a truck driver was injured when he drove his employer's truck into an excavation dug by the defendant. In the driver's personal injury suit, the parties agreed to a bifurcated trial and the jury rendered a verdict on liability in the plaintiff's favor. Thereafter, the parties settled before damages were determined, and a dismissal with prejudice was filed. In the second suit, the employer sued for damage to its truck. In the reported case, the court held that the dismissal with prejudice and payment were equivalent to a judgment in favor of the driver on the merits and applied nonmutual issue preclusion on liability.

In the litigation reported as *Kannel v. Kennedy,* 94 F.2d 487 (3d Cir.1937), the plaintiff in the first suit was the defendant in the second suit and the defendant in the first suit was the plaintiff in the second suit. Each alleged that the other's negligence caused injury in the same accident. The plaintiff in the first suit obtained a verdict on liability and damages, but no judgment was entered because of post-trial motions. The parties to the first suit settled before the new trial motion was decided, and the case was marked "compromised, settled and discontinued." In the reported case, the court held that the settling defendant's acquiescence in the verdict in the earlier case was " 'equivalent to a judgment on the verdict as a conclusive bar of the claims' " (quoting *Pollitz v. Schell,* 30 F. 421, 422 (U.S. Cir. Ct. for S.D.N.Y. 1887)).

Issue preclusion, based on a verdict, without a final judgment having been entered, was applied in *Miller v. Simons,* 239 Minn. 523, 59 N.W.2d 837 (1953). The litigation arose out of the collision of two trucks. In case No. 1, the owner of vehicle No. 1, sued the driver and owner of vehicle No. 2, and obtained a verdict for damages. Apparently because the time for post-trial motions had not run, no judgment had been

---

there had been a third case involving the same type of machinery in which the verdict had been in favor of the manufacturer.

entered when the defendants in case No. 1 paid the amount of the verdict. A stipulation of dismissal with prejudice was entered. In case No. 2, the owner of vehicle No. 2, who was a passenger therein at the time of the accident (but who had been a defendant in case No. 1), sued the owner and driver of vehicle No. 1. The court concluded that the plaintiff in case No.2 had acquiesced in the finding in case No. 1, that neither the driver nor the owner of vehicle No. 1 was responsible for the accident, but that it had been caused by the plaintiff's servant. Further, the issue preclusion defense was available to the driver of vehicle No. 1, although he was not a party to case No. 1, because the verdict for the owner in that case was tantamount to a finding that the driver of vehicle No. 1 was not negligent.

It has also been held that, where liability has been decided by a partial summary judgment and the parties settled, terminating the litigation before an appealable final judgment is entered, the determination of an issue by summary judgment is preclusive of that issue in subsequent litigation between the parties. *See Siemens Med. Sys., Inc. v. Nuclear Cardiology Sys., Inc.*, 945 F.Supp. 1421, 1435 (D.Colo.1996) ("Significantly, where, as here, a party has settled and dismissed the case with prejudice, Fed.R.Civ.P. 54(b) no longer applies, and whatever orders have been entered into the case are frozen, not subject to reconsideration."); *Ossman v. Diana Corp.*, 825 F.Supp. 870, 875 (D.Minn.1993) ("'[W]e believe that finality for purpose of appeal . . . is not necessarily the finality that is required for issue preclusion purposes. . . . "We see no reason why in an appropriate case a ruling that is final on the issue of liability should not preclude the party against whom the decision ran from presenting further evidence on the issue there finally determined." ' ") (quoting *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544 (8th Cir.1990), cert. denied, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991)).

The rule that Plaintiffs urge be applied here appears to be the current law in Florida. *See Armellini Express Lines, Inc. v. Sexton*, 384 So.2d 310 (Fla.App.1980). There, successive litigation arose out of a three-vehicle accident. A jury had

returned a verdict in an earlier case finding that one Carver was 100% negligent. That case was settled before entry of final judgment. Subsequently, a second driver involved in the accident sued Carver and obtained a partial summary judgment in the trial court that Carver was negligent, based on "estoppel by judgment." This was reversed on appeal. The court said:

> "There was no judgment in the prior suit against the appellants that could serve as the basis for estoppel by judgment in this case. Generally, a final judgment is necessary to serve as the basis for estoppel by judgment. [Citing Florida cases]. Here, there was only a verdict, and a verdict without a judgment is generally inadequate as a basis for estoppel by judgment. 50 C.J.S. *Judgments* § 614 (1947)."

*Id.* at 311.

The rule for which the Plaintiffs contend is well illustrated by *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265 (5th Cir.1986). In that case, a shipfitter, employed by a contractor, was injured at a shipyard while working on a vessel under construction. The worker sued the shipyard, contending that it was liable, under the Longshoreman's and Harbor Worker's Compensation Act, 33 U.S.C. § 905(b), as the *pro hac vice* owner of the vessel. On partial summary judgment, the court so found. Thereafter, the case settled. In subsequent litigation between the shipyard and its comprehensive liability insurer, the shipyard sought indemnity, and the district court, applying issue preclusion, held that the worker was injured on a vessel of which the shipyard was *pro hac vice* owner. This became one of the issues on appeal to the Fifth Circuit, but it declined to apply issue preclusion. It reasoned that predicating issue preclusion on a partial summary judgment would create more problems than it would solve and would, as a practical matter, render appealability almost irrelevant. It appeared to the court that "the result is either that nearly every interlocutory ruling will be issue preclusive, or that it will be almost impossible to determine in

advance which will be preclusive and which not." 786 F.2d at 1271 (footnote omitted).

## Decision—Brenton

■ We conclude that, under Maryland law, preclusive effect should be given to the determination by the jury in the New York action that Brenton was responsible for the accident, inasmuch as the settlement removed the jury's findings from the possibility of subsequent modification, absent extraordinary circumstances, such as fraud, mistake, or irregularity.

Initially, we observe that the Court of Appeals gives considerable, and at times, persuasive weight to the position taken by the American Law Institute in Restatement (Second) of Judgments. *See Prince George's County v. Brent,* 414 Md. 334, 342 n. 9, 995 A.2d 672, 676 n. 9 (2010) (§ 24); *Underwood–Gary v. Mathews,* 366 Md. 660, 670 n. 9, 785 A.2d 708, 714 n. 9 (2001) (§ 50); *Attorney Grievance Comm'n v. Bear,* 362 Md. 123, 132–33, 763 A.2d 175, 180–81 (2000) (§ 28); *Porter Hayden Co. v. Bullinger,* 350 Md. 452, 480, 713 A.2d 962, 975 (1998) (§ 57); *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship,* 338 Md. 1, 10–11, 655 A.2d 1265, 1269 (1995) (§ 22); *Leeds Fed. Sav. & Loan Ass'n v. Metcalf,* 332 Md. 107, 120, 630 A.2d 245, 246 (1993) (§§ 27–29); *deLeon v. Slear,* 328 Md. 569, 580–81, 616 A.2d 380, 385 (1992) (§§ 19 & 51); *Jones v. Baltimore City Police Dep't,* 326 Md. 480, 488, 606 A.2d 214, 218 (1992) (§ 2); *Rowland v. Harrison,* 320 Md. 223, 232, 577 A.2d 51, 55 (1990) (§ 22); *Cassidy v. Board of Educ.,* 316 Md. 50, 57, 557 A.2d 227, 230 (1989) (§ 19); *Welsh v. Gerber Products, Inc.,* 315 Md. 510, 518, 555 A.2d 486, 490 (1989) (§ 29); *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 494–95, 525 A.2d 232, 236 (1987) (§ 24); *Small v. Ciao Stables, Inc.,* 289 Md. 554, 562, 425 A.2d 1030, 1034 (1981) (§ 85).

Section 13, Comment *e* of Restatement (Second) of Judgments is referred to in *Blades v. Woods,* 338 Md. 475, 659 A.2d 872 (1995), involving two claims in one action. One claim was a police officer's administrative appeal from a disciplinary decision. Joined with that was the plaintiff's claim under 42

U.S.C. § 1983 alleging disparate treatment. The decision on the judicial review claim was affirmed by the circuit court which thereafter granted summary judgment on the § 1983 claim based upon lack of evidence. The police officer appealed to this Court, contending that the circuit court had erred by failing to compel discovery designed to develop proof on the § 1983 claim. This Court affirmed, by holding that the interlocutory judgment on the judicial review claim was preclusive of the claim of disparate treatment. The Court of Appeals reversed in a *per curiam* opinion, primarily because the basis of decision by this Court was not the basis of the summary judgment decision by the circuit court. The Court of Appeals also pointed out that the judgment on the judicial review claim "remained interlocutory until the entire action was disposed of. *See* Restatement (Second) of Judgments § 13, cmt. e (1982)." *Id.* at 479, 659 A.2d at 874.

We shall assume, *arguendo*, that the reference in *Blades* to an interlocutory judgment, that had not been certified under Maryland Rule 2–602(b)(1), is an alternative holding that there was a lack of requisite finality for issue preclusion. *Blades,* nevertheless, is distinguishable from the case before us. Here, the interlocutory determination was followed by a voluntary dismissal with prejudice.

■ Under Maryland law, a docket entry recording a voluntary dismissal with prejudice, previously called "an order of satisfaction," constitutes a judgment which operates, at a minimum, as a bar to a further action on the same claim. *See Welsh v. Gerber Products, Inc.,* 315 Md. at 519, 555 A.2d at 490; *Missler v. Anne Arundel County,* 271 Md. at 78, 314 A.2d at 456; *Cox v. Maryland Elec. Ry. Co.,* 126 Md. 300, 304, 95 A. 43, 44 (1915), *overruled on other grounds, Morgan v. Cohen,* 309 Md. 304, 523 A.2d 1003 (1987); *Clark v. Southern Can Co.,* 116 Md. 85, 95, 81 A. 271, 275 (1911) ("In legal contemplation the entry of 'settled' was made under the eye and with the sanction of the Court, and in our opinion, it should be considered and taken here as a judicial act, and for

that reason, is no longer open to question or controversy in any collateral proceeding.").[3]

In contexts other than a liability verdict plus settlement, this Court has applied, or favorably referenced, Restatement (Second) of Judgments § 13. In *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 852 A.2d 1029 (2004), one question presented was whether issue preclusion could be applied based on a finding in earlier litigation between the same parties in which a final judgment had been entered, but where that judgment was on appeal, without decision, at the time when the court in the later litigation applied issue preclusion. The answer to the question turned on whether, as

---

3. *Missler v. Anne Arundel County*, 271 Md. 70, 314 A.2d 451 (1974), can be read as holding that a settlement has issue preclusive effects, although, in *Missler*, it does not appear that there had been any factual or legal judicial determinations made in the earlier litigation.

Missler was a developer who had deposited $64,000 with the County to cover the estimated shortfall between user fees to be paid and the cost of extending a sewer line to serve Missler's development. When the work was completed, there was an overrun cost to the County of $16,000, which Missler refused to pay. The County sued and moved for summary judgment but, before the motion was determined, the parties settled and the case was marked "paid, settled and satisfied." Thereafter, Missler sued, contending that the County had breached the deposit agreement and that he was entitled to a refund of some or all of the $64,000 deposit. The *Missler* Court held that "with the entry of a final judgment," via the order of agreed, settled and satisfied, "any question as to whether [Missler] deposited too much or whether as a result of some breach on the part of the county, he was not required to make an additional deficit deposit (or for that matter, any deposit at all), having been thus judicially determined, is no longer open to dispute here." *Id.* at 78, 314 A.2d at 456.

Thereafter, in *Frontier Van Lines v. Maryland Bank & Trust Co.*, 274 Md. 621, 336 A.2d 778 (1975), the Court of Appeals, after defining *res judicata*, made the following observation:

"[A]nd *see Travelers Insurance Co. v. Godsey*, 260 Md. 669, 676, 273 A.2d 431, 435 (1971) which distinguishes the doctrine of res judicata from that of collateral estoppel, a distinction which we intend to observe notwithstanding what might be regarded as a contrary intimation in *Missler v. Anne Arundel County*, 271 Md. 70, 77, 314 A.2d 451, 456 (1974)."

*Id.* at 623, 336 A.2d at 780.

In view of the above, we do not place our holding in the instant matter on a possible reading of *Missler* that would take us beyond where we need to go to decide this case.

here, the traditional rule or the more modern rule should be applied. This Court, speaking through Judge Krauser (now Chief Judge), and after a thorough review of the authorities, 157 Md.App. at 521–24, 852 A.2d at 1038–40, concluded that "a broad consensus has emerged that the pendency of an appeal should not suspend the operation of a judgment for purposes of *res judicata* or collateral estoppel. This view is, in the words of Comment *f* to the Restatement (Second) of Judgments, 'the better view.'" *Id.* at 524, 852 A.2d at 1040.

Comment *g* to Restatement § 13 was fully reviewed by Judge Wilner (later Chief Judge), writing for this Court in *Morgan v. Morgan,* 68 Md.App. 85, 510 A.2d 264 (1986), where a former wife attempted to reopen an enrolled divorce decree on the ground of her incompetency. After the decree, that had converted entireties realty to a tenancy in common, the former husband brought a partition action in which a trustee was appointed to sell the property. There had been no sale and, consequently, no order of ratification. This Court considered the order to sell "'adequately deliberated and firm,'" Restatement § 13, cmt. *g,* to preclude reopening the divorce case and appointing a guardian for the former wife. *Id.* at 87, 510 A.2d at 265. The order to sell was an interlocutory order, appealable by statute, and, prior to the statute, it appeared to have been treated as an appealable final judgment.

*See also* S. Nesin, *Note: The Benefits of Applying Issue Preclusion to Interlocutory Judgments in Cases that Settle,* 76 N.Y.U. L.Rev. 874 (2001).

For all the foregoing reasons, we hold that the claim of the driver, Brenton, is barred by issue preclusion.

### Decision—The Passengers

 The passengers were not parties to the New York litigation. Even if the special verdict of the New York jury found Brenton exclusively liable for the accident, State Farm cannot use that finding as issue preclusion against the passengers. Findings adverse to nonparties in the earlier litigation cannot be binding upon them. *See Blonder–Tongue Lab., Inc.*

*v. University of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position. *See Hansberry v. Lee,* 311 U.S. 32, 40, [61 S.Ct. 115, 117, 85 L.Ed. 22 (1940) ]; *Bernhard [v. Bank of Am. Nat'l Trust & Sav. Assoc.*], 19 Cal.2d [807], 811, 122 P.2d [892], 894 [ (1942) ]."); *Parklane Hosiery Co.,* 439 U.S. at 327 n. 7, 99 S.Ct. at 649 n. 7 ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefor has never had an opportunity to be heard.").

Accordingly, we reverse the judgment of the circuit court as to Denise, Tashera, and Taeysha.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED AS TO THE APPEL-LANT BRENTON BRYAN AND REVERSED AS TO THE APPELLANTS, DENISE BRYAN, TAEYSHA BRYAN, AND TASHERA DAVIS.**

**COSTS TO BE PAID 25% BY THE APPELLANT, BRENTON BRYAN, AND 75% BY THE APPELLEE, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**